IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


JACKIE C. SHANE,

        Plaintiff,

vs.

                             No. Civ. 01-194 MV/WWD

BRIAN KILLINGER, IN HIS INDIVIDUAL CAPACITY,
and THE CITY OF ALBUQUERQUE,

        Defendants.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment, filed May 18, 2001 [**Doc. No. 17**].  The Court, having reviewed the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED.**


## BACKGROUND

The following are the material undisputed facts.[1]  On November 12, 2000, Albuquerque Police Officer Brian Killinger was patrolling a neighborhood in Albuquerque, New Mexico. Officer Killinger stopped at the intersection of Lomas and Alvarado, then made a left-hand turn from southbound Alvarado onto eastbound Lomas.  Around the same time, Plaintiff was riding a

---

[1]    The Court accepts as undisputed all facts admitted by both parties and all facts for which no competent contrary evidence has been presented by the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

bicycle in the neighborhood, and approached the same intersection where Officer Killinger was stopped. As Officer Killinger was driving away, Plaintiff yelled to him that he failed to use his turn signal. Officer Killinger returned to the intersection, where Plaintiff was stopped with her bicycle. Plaintiff told Officer Killinger that he should have used his turn signal. In response, Officer Killinger told Plaintiff that she had failed to make a complete stop at the stop sign. Plaintiff then told Officer Killinger that if he cited her for failing to stop at the stop sign, she would file a report against him. Plaintiff was agitated throughout her interaction with Officer Killinger. Officer Killinger contacted his supervisor so that Plaintiff could speak with him. Plaintiff initially refused to give Officer Killinger her real name; Plaintiff states that this is because she was afraid of Officer Killinger. Plaintiff then gave Officer Killinger a false name. A physical altercation ensued. Officer Killinger placed Plaintiff under arrest.

Plaintiff filed a civil complaint under 42 U.S.C. § 1983, alleging that Officer Killinger violated her rights under the Fourth and Fourteenth Amendments by unlawfully detaining her and by using excessive force against her. Plaintiff also set forth several state law tort claims. Defendants now seek summary judgment with respect to all of Plaintiff's claims. In support of their motion, Defendants argue that Officer Killinger is entitled to summary judgment with respect to Plaintiff's constitutional claims on the basis of qualified immunity, that Officer Killinger is entitled to summary judgment with respect to Plaintiff's state law tort claims on the basis of sovereign immunity, and that the City of Albuquerque is entitled to summary judgment with respect to Plaintiff's state law claims for lack of notice.

**STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving

3

party's case.  *Celotex*, 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.  However, on a motion for summary judgment, the issue is "not whether [the Court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.


## ANALYSIS

### A.    Federal Constitutional Claims

This action is replete with disputed material issues.  Defendants argue that Plaintiff failed to make a complete stop at the stop sign located at the intersection.  *See* Mem. in Supp. of Mot. for Summ. J. at 2, Ex. 1 at ¶¶ 8-9.  Plaintiff contends, however, that she did make a complete stop, and proceeded into the intersection only after determining that the way was clear.  *See* Resp. to Mot. for Summ. J. at 3, Ex. 1 at ¶¶ 3-4.  This issue is material because it goes directly to the question of whether Officer Killinger had reasonable suspicion or probable cause to detain Plaintiff.

Defendants also assert that Officer Killinger made his left-hand turn only after Plaintiff proceeded through the intersection.  *See* Mem. in Supp. of Mot. for Summ. J. at 3, Ex. 1 at ¶ 10. Plaintiff contends, however, that Officer Killinger made a left-hand turn directly in front of Plaintiff, without using his turn signal, cutting her off and nearly causing her to collide with his police car.  *See* Resp. to Mot. for Summ. J. at 3, Ex. 1 at ¶¶ 4-5.  The parties agree that Plaintiff then yelled to Officer Killinger that he had failed to use his turn signal.  This issue is material

4

because it goes directly to Plaintiff's contention that Officer Killinger stopped Plaintiff in order to retaliate against her for noting his failure to use his turn signal, rather than for failing to obey a traffic law.

Defendants argue next that Officer Killinger returned to the intersection after making the left-hand turn because he saw Plaintiff waving her arms at him through his rear-view mirror. *See* Mem. in Supp. of Mot. for Summ. J. at 3, Ex. 1 at ¶¶ 11-12. Plaintiff contends, however, that she never waved her arms in his direction. *See* Resp. to Mot. for Summ. J. at 3-4, Ex. 1 at ¶ 6. Defendants based their argument that Officer Killinger had reasonable suspicion to approach Plaintiff partly on Officer Killinger's assertion that Plaintiff was waving her arms at him; this issue is, therefore, material to the question of whether Officer Killinger had reasonable suspicion or probable cause to detain Plaintiff.

Defendants assert that after Plaintiff gave Officer Killinger a false name, he determined that she was being evasive so he grabbed onto her rear tire to prevent her from leaving. *See* Mem. in Supp. of Mot. for Summ. J. at 4, Ex. 1 at ¶ 21. Plaintiff argues, however, that Officer Killinger grabbed not the rear tire of her bicycle, but her head. Plaintiff contends further that Officer Killinger then forcibly pulled Plaintiff off the bicycle. *See* Resp. to Mot. for Summ. J. at 6, Ex. 1 at ¶¶ 10-11. This disputed issue is material to Plaintiff's excessive force claim. Defendants also contend that Officer Killinger asked Plaintiff to give him her name, which she refused to do. *See* Mem. in Supp. of Mot. for Summ. J. at 4, Ex. 1 at ¶ 21. Plaintiff maintains, however, that she did not wish to give him her name because he had just forcibly pulled her off of her bicycle by her head and she was afraid of him, and that she offered to provide her name if he would get off her bicycle, which he refused to do. *See* Resp. to Mot. for Summ. J. at 6, Ex. 1 at ¶¶ 10-11. This

disputed issue is material to Defendants' probable cause argument and also to Plaintiff's excessive force claim.

Defendants maintain that Plaintiff jabbed Officer Killinger in the chest three times. *See* Mem. in Supp. of Mot. for Summ. J. at 4-5, Ex. 1 at ¶¶ 25 , 30. Plaintiff denies ever jabbing or poking Officer Killinger in the chest, and denies ever bumping into him or touching him in any manner whatsoever. *See* Resp. to Mot. for Summ. J. at 6, Ex. 1 at ¶ 16. Defendants argue that Officer Killinger, with his palm open, pushed Plaintiff in the right shoulder area in order to maintain some distance from her. *See* Mem. in Supp. of Mot. for Summ. J. at 4, Ex. 1 at ¶ 26. Plaintiff argues, however, that Officer Killinger struck her in the right breast, not in the area of the shoulder. *See* Resp. to Mot. for Summ. J. at 6, Ex. 1 at ¶ 15. These disputes are material to Plaintiff's excessive force claim.

Defendants also maintain that Plaintiff attempted to leave the scene, *see* Mem. in Supp. of Mot. for Summ. J. at 4-5, Ex. 1 at ¶ 29; and that Plaintiff resisted Officer Killinger's attempts to handcuff her, *see* Mem. in Supp. of Mot. for Summ. J. at 5, Ex. 1 at ¶ 32. Plaintiff denies both of these contentions. *See* Resp. to Mot. for Summ. J. at 7, Ex. 1 at ¶ 19. This dispute is material to Plaintiff's excessive force claim. Thus, there are clearly several disputed issues of material fact.

Defendants argue, nonetheless, that summary judgment is warranted on each of Plaintiff's constitutional claims. With respect to Plaintiff's unlawful detention claim, Defendants argue that Officer Killinger had both reasonable suspicion and probable cause to detain Plaintiff. In support of their assertions, Defendants rely on *Atwater v. City of Largo*, – S.Ct. –, 2001 WL 408925, 16 (April 24, 2001); *Brierly v. Schoenfeld*, 781 F.2d 838, 841 (10th Cir. 1986); *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000); *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995);

*Latta v. Keryte*, 118 F.3d 693, 701 n.6 (10th Cir. 1997); and *Nagol v. State of New Mexico*, 923 F.Supp. 190 (D.N.M. 1996).  With respect to Plaintiff's excessive force claim, Defendants assert that Officer Killinger's actions were reasonable.  In support of this assertion, Defendants rely on *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Latta v. Keryte*, 118 F.3d 693, 701 (10th Cir. 1997); and *Bella v. Chamberlain*, 24 F.3d 1251, 1257 (10th Cir. 1994).

A careful review of Defendants' arguments, however, reveals that none of the cases cited actually supports Defendants' summary judgment motion because the validity of Defendants' arguments is entirely dependent upon the accuracy of Defendants' version of the facts.  For example, Defendants argue that Officer Killinger had the requisite reasonable suspicion to stop Plaintiff, *see Terry v. Ohio*, 392 U.S. 1 (1968), because: Plaintiff had committed a traffic violation by failing to come to a complete stop, *see* Mem. in Supp. of Mot. for Summ. J. at 7; Plaintiff was stopped in the middle of the intersection waving her arms at him, *see id.* at 8; Plaintiff was agitated, *see id.*; Plaintiff provided a false name, *see id.*; Plaintiff attempted to ride away from the scene after giving him a false name, *see id.*; and Plaintiff jabbed her finger into his chest and bumped into him, *see id*.[2]  Almost all of these issues are disputed.  Plaintiff does not dispute that she was generally agitated during the encounter.  However, if Plaintiff's version of the facts is correct, then Plaintiff would have become agitated only after almost being run into by a police car whose driver had failed to use his turn signal.  Defendants do not argue, and the Court does not find, that such agitation alone would constitute reasonable suspicion.  Plaintiff also does not

---

[2]     Defendants also argue that Officer Killinger had reasonable suspicion to detain Plaintiff because she was yelling and "he did not know what she was yelling or why she was yelling." Reply to Resp. to Mot. for Summ. J. at 4.  Defendants have, however, submitted no evidence to substantiate this factual assertion.

dispute that she initially gave Officer Killinger a false name.  However, if Plaintiff's version of the

facts is correct, then Officer Killinger would have had no justification for detaining Plaintiff in the

first place and Plaintiff would have been under no obligation to answer Officer Killinger's

questioning.[3]  *See Florida v. Royer*, 460 U.S. 491, 497-98 (1983).

In addition, Defendants argue that Officer Killinger had probable cause to arrest Plaintiff

for a stop sign violation, for concealing her identity, for resisting and evading a police officer, for

assault, and for battery.  *See* Mem. in Supp. of Mot. for Summ. J. at 11.  The Court would be

inclined to agree that Officer Killinger had probable cause if it were undisputed that Plaintiff failed

to stop at the stop sign, concealed her identity, resisted or evaded Officer Killinger, assaulted

Officer Killinger, or battered Officer Killinger.  However, as explained above, Defendants have

failed to carry their burden of demonstrating that there is no genuine dispute of material fact with

respect to these issues.

Finally, Defendants argue that Officer Killinger did not use excessive force because

Plaintiff was "verbally abusive, insulting, combative, confrontational, and uncooperative before,

during, and after her arrest," because Plaintiff "jabbed Officer Killinger in the chest," because

Plaintiff "jabbed Officer Killinger in the chest two more times and she also bumped into him," and

because Officer Killinger simply pushed Plaintiff away.  *See* Mem. in Supp. of Mot. for Summ. J.

---

[3]    *Oliver v. Woods*, 209 F.3d 1179 (10th Cir. 2000), is clearly distinguishable.  In *Oliver*, it
was undisputed that the defendants were notified that an alarm had been set off at an auto repair
shop in the early morning hours and that the Plaintiff was seated in a car in the parking lot.  The
Tenth Circuit ruled that the defendant officers had the requisite reasonable suspicion of criminal
activity and that it was permissible for the officers to question the Plaintiff in order to determine
his identity.  *See id.* at 1186.  Here, all of the relevant facts are disputed.  Unlike in *Oliver*, a
determination that the officers in question had reasonable suspicion is entirely dependent on a
finding that Defendants' version of the facts is the correct one.

at 12.  In their reply to Plaintiff's response to their summary judgment motion, Defendants assert

that "[t]he only force Officer Killinger used was when he pushed Plaintiff away from him as she

was advancing towards him."  Reply to Resp. to Mot. for Summ. J. at 8.  All of Defendants'

contentions, however, are disputed.  Plaintiff does not dispute that she was agitated and

argumentative; however, she does dispute that she was in any way physically confrontational.  *See*

Resp. to Mot. for Summ. J. at 4.  Moreover, she denies ever jabbing, poking, or touching Officer

Killinger.  *See id.*  Finally, she contends that Officer Killinger struck in her the right breast, leaving

a bruise, rather than simply push her away from him.  *See* Resp. to Mot. for Summ. J. at 6, 8,

Ex. 1 at ¶¶ 15, 23.  As with their other arguments, Defendants have failed to carry their burden of

demonstrating that there is no genuine dispute with respect to Plaintiff's excessive force claim.[4]

As explained above, the material submitted by the parties in support of and in opposition

to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v.*

*United States*, 590 F.2d 884, 887 (10th Cir. 1979).  Construing the material submitted by the

parties in favor of Plaintiff, the Court finds that Defendants have not met their burden of showing

that "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus.,*

*Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Defendants are, therefore, not

entitled to judgment as a matter of law with respect to any of Plaintiff's constitutional claims.

---

[4]    Defendants contend that Plaintiff cannot succeed on her excessive force claim because she
has presented no medical evidence of injury resulting from Officer Killinger's allegedly
unconstitutional conduct.  *See* Reply to Resp. to Mot. for Summ. J. at 10.  While it is true that the
Tenth Circuit has not upheld an excessive force claim without some evidence of physical injury,
*see Bella v. Chamberlain*, 24 F.3d 1251, 1257 (10th Cir. 1995), Defendants point to no caselaw
establishing that a Plaintiff must submit *medical* evidence to support an excessive force claim.
Plaintiff has submitted evidence, in the form of an affidavit, substantiating her claim that she was
injured by Officer Killinger's conduct; this is sufficient for summary judgment purposes.

**B.      Qualified Immunity**

"Qualified immunity protects government officials from individual liability in a § 1983

action unless the officials violated clearly established constitutional rights.  *See Radecki v. Barela*,

146 F.3d 1227, 1228 (10th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In

order to defeat a qualified immunity defense, a plaintiff must show: (1) that the defendant's

actions violated a constitutional or statutory right; and (2) that the constitutional or statutory

rights the defendant allegedly violated were clearly established at the time of the conduct at issue.

*See id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).

To demonstrate that the right in question was "clearly established," the Plaintiff must show

that the "contours of the right [are] sufficiently clear that a reasonable official would understand

that what he is doing violates that right."  *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265,

1278 (10th Cir. 1998) (quoting *Anderson, v. Creighton*, 483 U.S. at 640).  The Plaintiff is required

to demonstrate "some, but not identical, correspondence between the cases cited and the factual

situation in the case at hand."  *Finn v. New Mexico*, 249 F.3d 1241, 1250 (10th Cir. 2001) (citing

*Horstkoetter*, 159 at 1278).

Plaintiff argues that Defendants violated her right to be free from unreasonable seizures

and her right not to be subjected to excessive force under the Fourth and Fourteenth

Amendments.  Therefore, Plaintiff has clearly asserted that Defendants' actions violated a

constitutional right.  Thus, if Plaintiff can demonstrate that the rights in question were clearly

established at the time the allegedly unconstitutional acts took place, Officer Killinger will not be

entitled to qualified immunity.

The Tenth Circuit has repeatedly held that an individual's Fourth Amendment right to be

free from detention that is not supported by at least reasonable suspicion is clearly established.

*See Oliver*, 209 F.3d at 1191 (citing *United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir.

1986).  Therefore, the Court finds that a reasonable officer in Officer Killinger's position would

have clearly understood that detaining Plaintiff without reasonable suspicion or probable cause

would have violated Plaintiff's right to be free from an unreasonable seizure.  Defendants are,

therefore, not entitled to qualified immunity with respect to Plaintiff's unlawful detention claim.

Finally, the Tenth Circuit has held that the law governing excessive force cases is clearly

established.  *See Mick v. Brewer*, 76 F.3d 1127, 1135-36 (10th Cir. 1996) (citing *Graham v.*

*Connor*, 490 U.S. 386 (1989)).  Moreover, Plaintiff is correct that summary judgment is generally

inappropriate in excessive force cases, where "the substantive inquiry that decides whether the

force exerted by police was so excessive that it violated the Fourth Amendment is the same

inquiry that decides whether the qualified immunity defense is available to the government actor."

*Mick*, 76 F.3d at 1135 n.5 (citing *Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir.

1991)).  In excessive force cases, the reasonableness of the officer's conduct is usually a question

of fact to be determined by the fact finder; summary judgment is only appropriate in such cases if

the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the

officer's use of force was objectively reasonable under the circumstances.  *See Abraham v. Raso*,

183 F.3d 279, 290 (3rd Cir. 1999).  Construing the facts in favor of Plaintiff, and considering the

totality of the circumstances, the Court cannot conclude that Officer Killinger's use of force was

objectively reasonable.  Therefore, Defendants are not entitled to summary judgment on Plaintiff's

excessive force claim.

C.      **State Law Tort Claims**

The New Mexico Tort Claims Act was enacted in response to the New Mexico Supreme

Court's decision in *Hicks v. State*, 544 P.2d 1153 (N.M. 1975), which abolished judicially

recognized sovereign immunity.  *See Methola v. County of Eddy*, 622 P. 2d 234, 236 (1980).

Under the Act, governmental actors are immune from tort liability, except that this immunity

"does not apply to liability for personal injury, bodily injury, wrongful death or property damage

resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of

process, libel, slander, defamation of character, violation of property rights or deprivation of any

rights, privileges or immunities secured by the Constitution and laws of the United States or New

Mexico when caused by law enforcement officers while acting within the scope of their duties."

N.M.S.A. § 41-4-12 (1978).

It is undisputed that Officer Killinger was a "law enforcement officer."[5]  Moreover, it is

clear that Plaintiff's claims arise from allegations that Officer Killinger is liable to her for personal

injury resulting from a deprivation of her rights under the United States Constitution and for

assault, battery, false arrest, and/or false imprisonment.  Therefore, Plaintiff's state law tort claims

against Officer Killinger clearly fall within the statutory waiver of sovereign immunity.  Officer

Killinger is, therefore, not entitled to summary judgment with respect to Plaintiff's state law tort

claims against him.

Defendants also argue that the City of Albuquerque is entitled to summary judgment with

---

[5]      A "law enforcement officer" is "any full-time salaried public employee of a governmental
entity whose principal duties under law are to hold in custody any person accused of a criminal
offense, to maintain public order or to make arrests for crimes, or members of the national guard
when called to active duty by the governor."  N.M.S.A. § 41-4-3(D); *see also Weinstein v. City of
Santa Fe*, 916 P.2d 1313, 1317 (N.M. 1996) (construing meaning of "law enforcement officer.")

respect to Plaintiff's state law tort claims because Plaintiff did not provide notice of the lawsuit.

Under the Tort Claims Act, a Plaintiff seeking damages under the Act against a municipality must

provide written notice of "the time, place and circumstances of the injury" to the mayor of the

municipality within ninety days of the injury.  *See* N.M.S.A. § 41-4-16A.  However, there is an

exception to this requirement.  If the Plaintiff does not provide written notice, the Plaintiff may

satisfy the Act's notice requirement by providing "actual notice" of the injury to the relevant

agency or department.  To do so, the Plaintiff must provide "notice of a likelihood that litigation

may ensue, in order to reasonably alert the state to the necessity of investigating the merits of the

potential claim."  *Callaway v. New Mexico Dep't of Corr.*, 875 P.2d 393, 396 (N.M. Ct. App.

1994) (citing *Smith v. State ex rel. N.M. Dep't of Parks & Recreation*, 743 P.2d 124, 127 (N.M.

Ct. App. 1987); *Powell v. New Mexico Highway & Transp. Dep't*, 872 P.2d 388, 391 (N.M. Ct.

App. 1994)).

      Whether actual notice has been provided is a question of fact, and it is generally

inappropriate to resolve the question of actual notice through resolution of a summary judgment

motion.  *See Callaway*, 875 P.2d at 396.  In this case, however, the facts with respect to actual

notice are undisputed.  The parties agree that Plaintiff told Officer Killinger's supervisor, Sergeant

Garcia, that she wanted to file a report against the officers involved and that Sergeant Garcia told

her how to do so.  Sergeant Garcia gave Plaintiff his card and advised her that she could file an

internal affairs complaint.  Moreover, Sergeant Garcia taped his conversation with Plaintiff and

had it tagged into evidence.  Thus, the facts regarding notice are not in dispute.  The only dispute

is whether the notice provided was sufficient to establish "actual notice" under the statute.

      "The purpose of the notice requirements of the Tort Claims Act 'is to ensure that the

13

agency allegedly at fault is notified that it may be subject to a lawsuit.'"  *Lopez v. New Mexico*, 930 P.2d 146, 149 (N.M. 1996) (citing *New Mexico State Highway Comm'n v. Ferguson*, 652 P.2d 230, 231 (N.M. 1982)).  "[A]ctual notice for purposes of the Tort Claims Act means actual notice of the tort."  *Id.* (citing *City of Las Cruces v. Garcia*, 690 P.2d 1019, 1021 (N.M. 1984)). Receipt of a police report provides actual notice '"only where the report contains information which puts the governmental entity allegedly at fault on notice that there is a claim against it,' thereby satisfying the statutory purpose 'to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit.'"  *Id.* (quoting *Garcia*, 690 P.2d at 1021).  Here, as explained above, Sergeant Garcia provided in his report a detailed description of the incident as well as an explanation of his conversation with Plaintiff regarding a possible complaint.  Sergeant Garcia knew, and communicated via his report, that Plaintiff intended to file a complaint against the officers involved and even provided her with his card so that she could contact him in order to do so.  Moreover, Sergeant Garcia had the conversation taped and tagged into evidence.  The Court finds, therefore, that under the controlling New Mexico standard, Sergeant Garcia's police report constituted sufficient notice of the potentiality of litigation to satisfy the actual notice provision of the New Mexico Tort Claims Act.

## CONCLUSION

For the foregoing reasons, the Court finds that there are genuine disputes of material fact with respect to all of Plaintiff's constitutional claims, that Officer Killinger is not entitled to qualified immunity, that Officer Killinger is not entitled to statutory sovereign immunity, and that the City of Albuquerque received the notice to which it was entitled under the New Mexico Tort

Claims Act.  Therefore, the Court finds that Defendants are not entitled to judgment as a matter of law with respect to any of Plaintiff's claims.  *See* Fed. R. Civ. P. 56(c).

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Summary Judgment **[Doc. No. 17]** is hereby **DENIED.**

Dated this 17th day of September, 2001.

_____
Martha Vázquez
U. S. District Judge

Attorney for Plaintiffs
    Paul J. Kennedy
    Mary Y.C. Han

Attorney for Defendants
    Stephanie M. Griffin