**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JACKIE C. SHANE**,

    Plaintiff,

    vs.                                                          **CIV. NO. 01-194 MCA/WDS**

**BRYAN KILLINGER**,
in his individual capacity, and
the **CITY OF ALBUQUERQUE**,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Plaintiff's Motion for Judgment as a Matter of Law for Liability Against Defendant City of Albuquerque* [Doc. No. 180] filed on July 2, 2003. Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court finds that good cause exists for entering judgment as a matter of law against the City on Plaintiff's *respondeat superior* claim for the reasons set forth below.

**I.     BACKGROUND**

On February 16, 2001, Plaintiff Jackie Shane filed her *Complaint* [Doc. No. 1] in this Court against Defendants Bryan Killinger and the City of Albuquerque alleging civil-rights violations and tort claims under state law. The facts alleged in Plaintiff's *Complaint*, and in

her *Amended Complaint* [Doc. No. 73], are summarized in greater detail in a *Memorandum Opinion and Order* [Doc. No. 132] filed on March 31, 2003. As Defendant Killinger did not testify, Plaintiff's version of the facts was largely undisputed at trial.

In the *Memorandum Opinion and Order* [Doc. No. 132] filed on March 31, 2003, the Court granted *Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Plaintiff's Municipal Liability Claim and of her Claims Against Defendant Garcia* [Doc. No. 95], and denied the following motions: (1) *Defendant Bryan Killinger's Motion for Summary Judgment* [Doc. No. 92], (2) *Defendant City of Albuquerque's Motion for Separate Trials* [Doc. No. 97], and (3) *Defendant Bryan Killinger's Motion to Bifurcate Trial* [Doc. No. 90]. As a result of these rulings, this action was set to go to trial on Plaintiff's unlawful arrest and excessive force claims under 42 U.S.C. § 1983 against Defendant Killinger in his individual capacity, as well as Plaintiff's tort claims under state law for assault, battery, false imprisonment, and false arrest. Plaintiff also retained two viable claims against Defendant City of Albuquerque, namely that the City is vicariously liable for Defendant Killinger's torts under the state-law theory of *respondeat superior*, and that the City is directly liable under a state-law theory of negligent hiring, training, and supervision.

At the time of the above rulings, the two Defendants each had retained separate counsel. After the Court issued these rulings, however, Attorney Jeffrey Baker filed a *Notice of Substitution of Counsel* [Doc. No. 135] indicating that he was substituting for Attorney Stephanie M. Griffin as counsel for Defendant City of Albuquerque. As Mr. Baker had

previously entered an appearance for Defendant Killinger in his individual capacity [Doc. No. 41], the effect of this notice was to make Mr. Baker counsel for both Defendant Killinger (in his individual capacity) and the City of Albuquerque.

At the call of the calender on May 8, 2003, defense counsel renewed his motion to bifurcate the trial, and Plaintiff's counsel raised the issue of whether Mr. Baker's joint representation of Defendants Killinger and the City of Albuquerque presented a conflict of interest. [Doc. No. 160.] The Court convened a status conference later in the day on May 8, 2003, to address this issue further. Having determined that Mr. Baker's joint representation at trial would present a conflict and that substitute counsel for the City of Albuquerque was unavailable for the trial scheduled to commence the following week on May 13, 2003, the Court decided to bifurcate the trial, with Plaintiff's claims against Defendant Killinger tried first, and any remaining claims against the City tried to a different jury at a later date. [Doc. No. 161.]

The trial of Plaintiff's claims against Defendant Killinger commenced as scheduled on May 13, 2003, and was bifurcated into two phases. During the first phase, the jury reached a verdict in Plaintiff's favor on her unlawful arrest and excessive force claims under 42 U.S.C. § 1983, as well as her tort claims under state law for assault, battery, and false arrest. The jury found that Plaintiff's compensatory damages for these claims totaled $1,000. [Doc. No. 167.] The trial then proceeded to a second phase before the same jury to address Plaintiff's claim for punitive damages. Again the jury found in Plaintiff's favor and awarded her $40,000 in punitive-damages. [Doc. No. 170.]

The Court held a status conference on May 20, 2003, to inquire about the substitution of counsel for the City and the scheduling of the trial of Plaintiff's remaining claims against the City. [Doc. No. 173.] Attorney Stephanie M. Griffin substituted as counsel for Defendant City of Albuquerque on May 27, 2003, and the Court scheduled the next phase of the trial to commence on July 15, 2003. [Doc. No. 174, 175.]

On July 2, 2003, the parties filed a *Stipulation of Dismissal* [Doc. No. 181] regarding Plaintiff's negligence claim against the City. Plaintiff also filed a *Motion for Judgment as a Matter of Law for Liability Against Defendant City of Albuquerque* [Doc. No. 180] on that date. Plaintiff's motion states that Defendants take no position as to that motion, and the record reflects that Defendants filed no response in opposition to Plaintiff's motion. On July 2, 2003, the Court also received a letter via facsimile from Plaintiff's counsel, which states that, upon entry of judgment on Plaintiff's *respondeat superior* claim, the parties will not need to proceed to the trial of Plaintiff's claims against the City.

## II.  ANALYSIS

While Defendants did not file a response to Plaintiff's motion, this fact alone does not necessarily require that Plaintiff's motion be granted. Plaintiff must first meet her initial responsibility of demonstrating that she is entitled to judgment as a matter of law on her *respondeat superior* claim against the City, and the Court must make specific determinations on this issue to properly support its ruling on Plaintiff's motion. See Murray v. City of Tahlequah, 312 F.3d 1196, 1200 (10th Cir. 2002). Accordingly, this *Memorandum Opinion and Order* sets forth the grounds for granting Plaintiff's motion on the merits, as required

under Murray, 312 F.3d at 1200.  As these grounds depend in part on the manner in which the trial of this case was bifurcated as to the two Defendants, the Court also states for the record the legal authority and factual circumstances on which the bifurcation was based.

### A.     **Bifurcation**

This Court "has considerable discretion in determining how a trial is to be conducted." Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993).  In particular, Fed. R. Civ. P. 42(b) provides the Court with the authority to bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  See id.[1]

Although the Court initially denied Defendants' motions to bifurcate in the *Memorandum Opinion and Order* [Doc. No. 132] filed on March 31, 2003, new grounds for bifurcation arose when it became apparent that Attorney Jeff Baker's joint representation of both Defendants during the trial of this case would present a conflict of interest.  In actions under 42 U.S.C. § 1983, an attorney's attempt to jointly represent the interests of a

---

[1]For example, there is ample authority for bifurcating the trial of municipal liability claims from the trial of claims against police officers in their individual capacities under 42 U.S.C. § 1983.  See, e.g., Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999); Brunson v. Dayton, 163 F. Supp. 2d 919, 924-26 (S.D. Ohio 2001); Myatt v. City of Chicago, 816 F. Supp. 1259, 1264 (N.D. Ill. 1992); Marryshow v. Town of Bladensburg, 139 F.R.D. 318, 319 (D. Md. 1991).  But cf. Douglas L. Colbert, Bifurcation of Civil Rights Defendants:  Undermining Monell in Police Brutality Cases, 44 Hastings L.J. 499 (1993) (presenting arguments against bifurcation).  There is also authority for bifurcating a state-law claim of negligent supervision and training in this context.  See Ortiz v. N.M. State Police, 112 N.M. 249, 252, 814 P.2d 117, 120 (Ct. App. 1991).  More generally, bifurcating the issue of punitive damages is not unprecedented.  See, e.g., Simon v. Philip Morris Inc., 200 F.R.D. 21, 49 (E.D.N.Y. 2001); Lieberman-Sack v. Harvard Community Health Plan of New England, Inc., 882 F. Supp. 249, 257-58 (D.R.I. 1995). In some circumstances, it is also permissible to bifurcate in reverse and try the issue of damages before the issue of liability.  See, e.g., Angelo, 11 F.3d at 964

municipality and the individual interests of a police officer may present a conflict. See Johnson v. Bd. of County Comm'rs, 85 F.3d 489, 493 (10th Cir. 1996); Ricciuti v. N.Y. City Transit Auth., 796 F. Supp. 84, 88 (S.D.N.Y. 1992). When such a potential conflict is presented, the Tenth Circuit has "admonished that separate representation . . . is a 'wise precaution.'" Johnson, 85 F.3d at 493 (quoting Medina v. Housing Auth. of San Miguel County, No. 91-2094, 1992 WL 218990, at *3 (10th Cir. Sept. 4, 1992) (unpublished order and judgment)). "[I]f the potential conflict matures into an actual material conflict, separate representation would be required." Id.

In light of these admonitions from the Tenth Circuit, it was necessary for the Court to inquire about the conflict of interest that may have resulted if Mr. Baker jointly represented Defendants Killinger and the City of Albuquerque at trial in this case. The inability to obtain substitute counsel on short notice due to scheduling difficulties then provided grounds for bifurcating the trial in order to facilitate separate representation. Cf. Houseman v. United States Aviation Underwriters, 171 F.3d 1117, 1122 (7th Cir. 1999) (affirming a trial court's decision to bifurcate new claims added against an additional party on the eve of trial where existing parties would be prejudiced by further delay and adherence to the existing trial schedule did not leave sufficient time for the new party to prepare).

These difficulties also made it necessary to schedule the trial of Plaintiff's claims against the City before a different jury. The Court is aware that partial or bifurcated trials involving more than one jury must be tried in a manner "without confusion and uncertainty, which would amount to a denial of a fair trial." Gasoline Prods., Inc. v. Champlin Refining

Co., 283 U.S. 494, 497 (1931).  In particular, the Seventh Amendment to the United States Constitution prohibits "divid[ing] issues between separate trials in such a way that the same issue is reexamined by different juries." In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1303 (7th Cir. 1995).  "While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome." Houseman, 171 F.3d at 1126.

As explained in the next section of this *Memorandum Opinion and Order*, the first jury's findings on Defendant Killinger's individual liability would be binding on the second jury's adjudication of Plaintiff's *respondeat superior* claim against the City.  Thus, granting judgment as a matter of law against the City on that claim is consistent with the underlying principles regarding bifurcation cited above.

### B.     *Respondeat Superior* **Claim**

Under Fed. R. Civ. P. 50(a)(1), the Court may enter judgment as a matter of law against a party with respect to a claim or defense if a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, and the claim or defense cannot be maintained or defeated under the controlling law without a favorable finding on that issue.  Such a judgment may be entered only if the issue is raised prior to the submission of the case to the jury that would otherwise decide that issue.  See Am. & Foreign Ins. Co. v. Bolt, 106 F.3d 155, 159-60 (6th Cir. 1997).

The elements required to establish a municipality's liability for state-law tort claims under a *respondeat superior* theory were clarified by the New Mexico Supreme Court in

Weinstein v. City of Santa Fe, 1996-NMSC-021, 121 N.M. 646, 651-62, 916 P.2d 1313, 1318-19 (citing N.M. Stat. Ann. § 41-4-12 (Michie 1978 & Supp. 1996)).  Under New Mexico law, a municipality may be held vicariously liable for any alleged torts committed by one of its police officers if immunity for those torts has been waived under the New Mexico Tort Claims Act and the police officer was acting within the scope of his authority.  See id. at 651, 916 P.2d at 1318.  In particular, the municipality must have supervisory authority over the police department and its officers, and the municipality must not be "too remote an actor to be included as a defendant."  Id. at 652, 916 P.2d at 1319.

Assault, battery, and false arrest by a police officer are all torts for which immunity is waived under the New Mexico Tort Claims Act.  See N.M. Stat. Ann. § 41-4-12.  The New Mexico Tort Claims Act also waives immunity for "deprivation of a right secured by the federal or state constitution or laws."  McDermitt v. Corrections Corp. of Am., 112 N.M. 247, 248, 814 P.2d 115, 116 (Ct. App. 1991).

In this case, the first jury already has found in Plaintiff's favor on her state-law claims against Defendant Killinger for assault, battery, and false arrest, as well as her federal claims for unlawful arrest and excessive force.  Factual issues already decided by the first jury are binding on subsequent juries.  See generally Houseman, 171 F.3d at 1127, see, e.g., Marryshow, 139 F.R.D. at 321 (noting that if a plaintiff prevailed in the first phase of a bifurcated trial, "[t]he second trial jury would be advised of the binding determination in Plaintiff's favor by the jury in the first trial"); Sanford v. Johns-Manville Sales Corp., 923 F.2d 1142, 1146 (5th Cir. 1991) (similar); Whelan v. Abell, 939 F. Supp. 44, 47 (D.D.C.

1996) (similar). Accordingly, the first jury's findings in Plaintiff's favor on Defendant Killinger's individual liability for unlawful arrest and excessive force under 42 U.S.C. § 1983, as well as assault, battery, and false arrest under state law, would be binding on a second, subsequent jury adjudicating Plaintiff's *respondeat superior* claim against the City. See Sanford, 923 F.2d at 1146; Whelan, 939 F. Supp. at 47.

The first jury also decided the issue of damages. As Plaintiff's claims for compensatory damages against the City do not involve an injury that is separate and distinct from the injuries she sustained as a result of her claims against Defendant Killinger individually, the principle barring duplicative awards precludes Plaintiff from asking a second jury to award additional compensatory damages from the City. See Amato, 170 F.3d at 321; cf. Clappier v. Flynn, 605 F.2d 519, 530-31 (10th Cir. 1979) (prohibiting double recovery on federal civil-rights claim and related state-law claim when both claims "arose from the same, identical, operative facts"). Further, the New Mexico Tort Claims Act precludes an award of punitive damages on Plaintiff's state-law claims against the City. See N.M. Stat. Ann. § 41-4-19(B) (Michie 1978 & Supp. 1996). For these reasons, a second jury also would be precluded from deciding the issue of Plaintiff's damages.

Thus, the only remaining question to be tried with regard to Plaintiff's *respondeat superior* claim is whether Defendant Killinger was acting within the scope of his authority when he committed the torts of assault, battery, and false arrest. As to this remaining question, the evidence of record and the City's stipulations in the *Pretrial Order* [Doc. No. 130] establish that there is "'no controverted issue of fact upon which a reasonable person

could differ.'" Am. & Foreign Ins. Co., 106 F.3d at 157 (quoting Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir. 1991)). It is not disputed that the City had supervisory authority over the Albuquerque Police Department and Defendant Killinger at the time of the assault, battery, and false arrest, nor is there any colorable claim that Defendant Killinger's actions were too remote to form a basis for holding the City liable under these circumstances. Accordingly, Plaintiff is entitled to judgment as a matter of law on her *respondeat superior* claim against Defendant City of Albuquerque.

Entry of judgment on Plaintiff's *respondeat superior* claim makes it unnecessary to proceed to the second phase of the trial on that claim. In addition, the parties have stipulated to the dismissal of Plaintiff's state-law claim against the City for negligent hiring, training, and supervision. As there are no other remaining claims against the City, the trial set for July 15, 2003, has been vacated.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that the trial of this case was properly bifurcated, and that Plaintiff is entitled to judgment as a matter of law under Fed. R. Civ. P. 50(a) with respect to her *respondeat superior* claim against the City based on the first jury's verdict and Defendants' admissions in the *Pretrial Order*. There being no other remaining claims against the City, good cause exists to vacate the trial of Plaintiff's claims against the City.

**IT IS, THEREFORE, ORDERED** that *Plaintiff's Motion for Judgment as a Matter of Law for Liability Against Defendant City of Albuquerque* [Doc. No. 180] is **GRANTED.**

**IT IS FURTHER ORDERED** that the **JURY SELECTION/TRIAL** set for TUESDAY, July 15, 2003, at 9:00 a.m. is VACATED.

**SO ORDERED**, this 1st day of August 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge