## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JACKIE C. SHANE**,

        Plaintiff,

    vs.                                     **CIV. NO.  01-194 MCA/WDS**

**BRYAN KILLINGER**,
in his individual capacity, and
the **CITY OF ALBUQUERQUE**,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Bryan Killinger's ***Motion for Remittitur*** [Doc. No. 171] filed on May 19, 2003.  Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, I find that good cause exists for denying Defendant Killinger's motion for the reasons set forth below.

**I.**      **BACKGROUND**

On February 16, 2001, Plaintiff Jackie Shane filed her *Complaint* [Doc. No. 1] in this Court against Defendants Bryan Killinger and the City of Albuquerque alleging civil-rights violations and tort claims under state law.  The trial of Plaintiff's claims against Defendant Killinger commenced on May 13, 2003, and was bifurcated into two phases.  During the first phase of the trial, Plaintiff testified concerning the issues of liability and compensatory

damages.  Plaintiff's trial testimony is largely undisputed, as Defendant Killinger was not called and did not testify at trial.

According to Plaintiff's trial testimony, she is a faculty member employed at the University of New Mexico's science and engineering library.  She is also an avid and experienced bicyclist who uses her bicycle as her primary means of transportation.  On Sunday morning, November 12, 2000, Plaintiff dressed in her bicycling attire and began riding her bicycle through the streets of Albuquerque to the home of a friend who was going to join her for a bicycle ride in the foothills of the Sandia Mountains.

Plaintiff arrived and stopped at the intersection of Lomas Boulevard and Alvarado Street on her bicycle that Sunday morning.  As she was about to proceed through the intersection, she observed Defendant Killinger making a left turn directly in front of her without using his turn signal.  Upset that she was nearly "cut off," Plaintiff shouted at Defendant Killinger, urging him to use his turn signal.  Defendant Killinger stopped his police unit, exited it, and without any legal justification, proceeded to accost Plaintiff, grab her by her bicycle helmet, slam her bicycle down on the pavement, knock her to the ground, strike her in the breast, and handcuff her as she stood by the street.

After hearing Plaintiff's testimony and other evidence during the first phase of the trial, the jury reached a verdict in Plaintiff's favor on her unlawful arrest and excessive force claims under 42 U.S.C. § 1983, as well as her tort claims under state law for assault, battery, and false arrest.  The jury found that Plaintiff's compensatory damages for these claims totaled $1,000. [Doc. No. 167.]

The trial then proceeded to a second phase before the same jury to address Plaintiff's claim for punitive damages.  Plaintiff presented one witness who testified as to a prior incident in which Defendant Killinger was found to have used excessive force and to have been untruthful during the investigation of the incident.  Again Defendant Killinger did not testify.  The jury found in Plaintiff's favor, awarding her $40,000 in punitive-damages. [Doc. No. 170.]  On  May 19, 2003, Defendant Killinger filed a motion for remittitur regarding this punitive-damages award.  [Doc. No. 171.]

## II.   ANALYSIS

In his *Motion for Remittitur*, Defendant Killinger requests that the Court reduce the jury's verdict on punitive damages to no more than four times the compensatory damages award. The jury awarded compensatory damages in the amount of $1,000, and thus Defendant Killinger requests that the punitive damage award be reduced from $40,000 to $4,000 or less.

As grounds for this motion, Defendant Killinger does not cite or rely on the traditional or common-law doctrine of remittitur, under which a trial court may exercise its discretion by providing a plaintiff with the choice of either accepting a reduction in the jury's verdict on damages or retrying the entire case if the trial court finds the verdict to be excessive.  See generally Fed. R. Civ. P. 59; Linn v. United Plant Guard Workers of Am., Local 114, 383 U.S. 53, 65-66 (1966).  Rather, Defendant Killinger cites to the Supreme Court's recent jurisprudence on punitive damages in support of his assertion that this Court is obliged to reduce the jury's verdict in this case on constitutional grounds with no option of retrial.  See

State Farm Mut. Auto. Ins. Co. v. Campbell, ___ U.S. ___, 123 S. Ct. 1513 (2003); BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996).

Both Campbell and Gore involved the review of state-court judgments on matters of tort law to determine whether the level of punitive damages awarded by those courts complied with the Due Process Clause of the Fourteenth Amendment.  It is clear, however, that the constitutional limits on punitive-damages awards articulated in Campbell and Gore also apply to federal claims in federal courts by virtue of the Fifth Amendment's Due Process Clause and/or the Eighth Amendment's prohibition on excessive fines and cruel and unusual punishment.  See Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-34 (2001) (noting that the Fourteenth Amendment's Due Process Clause incorporates the Eighth Amendment's prohibitions); Lee v. Edwards, 101 F.3d 805, 809 n.2 (2d Cir. 1996) ("[T]he universal premise of [the] Supreme Court's due process reasoning suggests that the same considerations apply equally to the review of punitive damages awarded in federal court.").

The Constitution prohibits the Government "from imposing a 'grossly excessive' punishment on a tortfeasor."  Gore, 517 U.S. at 562 (quoting TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 454 (1993)).  The determination of whether an award of punitive damages violates this constitutional prohibition requires a two-step inquiry.  A court must first define the scope of the governmental interest that the award of punitive damages is intended to serve, and then must determine whether the award is "grossly excessive" in comparison to that governmental interest.  Id. at 568; accord Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1252-53 (10th Cir. 2000).

-4-

Under the first step of this inquiry, there can be no doubt that actions under 42 U.S.C. § 1983 serve a legitimate interest in assuring that individual rights guaranteed by the United States Constitution are "scrupulously observed." Carey v. Piphus, 435 U.S. 247, 266-67 (1978); accord Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986). In particular, this case implicates "the interests protected by the Fourth Amendment," which "are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests--a person's 'sense of security' and individual dignity." Holland v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001). The Supreme Court has expressly held that, in appropriate circumstances, punitive damages may be awarded against individual defendants in actions to protect such interests under 42 U.S.C. § 1983. See Smith v. Wade, 461 U.S. 30, 35 (1983).

I next turn to the question of whether the jury's award of punitive damages is grossly excessive in relation to the governmental interests identified in the preceding paragraph. To answer this question, I consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and his punitive damages award; and (3) the difference between the jury's punitive damages award and the civil penalties authorized or imposed in comparable cases. See Gore, 517 U.S. at 575; Campbell, 123 S. Ct. at 1520.

In determining whether an award of punitive damages is grossly excessive under these guideposts, a court is not required to treat the *amount* of punitive damages awarded by the jury with the deference accorded to a finding of fact. See Cooper Indus., Inc., 532 U.S. at

437.  In assessing whether the Defendant's *behavior* is sufficiently reprehensible to support

that award, however, I must make all reasonable inferences from the available evidence in

favor of the Plaintiff.  See Smith, 214 F.3d at 1253.

> ### 1.    Reprehensibility

The first guidepost, reprehensibility of the defendant's misconduct, is "the

most important indicium of the reasonableness of a punitive damages award." Gore, 517

U.S. at 575; accord Campbell, 123 S. Ct. at 1521.  Courts determine the degree of

reprehensibility by considering whether:

> the harm caused was physical as opposed to economic; the tortious conduct
> evinced an indifference to or a reckless disregard of the health or safety of
> others; the target of the conduct had financial vulnerability; the conduct
> involved repeated actions or was an isolated incident; and the harm was the
> result of intentional malice, trickery, or deceit, or mere accident.

Campbell, 123 S. Ct. at 1521.

Considering these factors, I conclude that the degree of reprehensibility of Defendant

Killinger's conduct is relatively high.  While the injuries sustained by Plaintiff were not

severe, there is no question that the harm caused by Defendant Killinger's unlawful arrest

and use of excessive force against Plaintiff was more physical than economic.  Given the fact

that Defendant Killinger had no legal justification for seizing Plaintiff in the first place, he

also violated her privacy interests, *i.e.*, her "'sense of security' and individual dignity."

Holland, 268 F.3d at 1195.  In this regard, the undisputed evidence at trial was that

Defendant Killinger's conduct included not only grabbing, pushing, and handcuffing

Plaintiff; it also involved striking her in the breast with his hand.

As reflected in the jury's verdict, the officer's use of excessive force evinced an indifference to or reckless disregard of Plaintiff's health or safety, if not intentional malice.[1] Although Plaintiff's *financial* vulnerability is not particularly relevant in this case, the record reflects a degree of *physical* vulnerability to Defendant Killinger's use of excessive force given the noticeable difference in size, weight, and build between Plaintiff and the officer. Further, Plaintiff presented evidence that this case was not the first instance in which Defendant Killinger had used excessive force against a detainee.  Plaintiff also presented evidence that this case was not the first instance in which Defendant Killinger had been untruthful about his use of excessive force.  Finally, the record reflects an element of deceit in Defendant Killinger's misconduct inasmuch as he attempted to justify his unlawful arrest and use of excessive force against Plaintiff by falsely claiming (on his belt tape and to other officers) that she had run a stop sign and committed a battery.  For these reasons, I conclude that, under the first guidepost articulated in <u>Campbell</u>, 123 S. Ct. at 1521, Defendant Killinger's violation of Plaintiff's civil rights is sufficiently reprehensible to warrant the amount of punitive damages awarded by the jury in this case.  <u>See Lee</u>, 101 F.3d at 810; <u>Blackledge v. Carlone</u>, 126 F. Supp. 2d 224, 229 (D. Conn. 2001).

---

[1]The jury was specifically instructed that in order to award punitive damages, they had to find that Defendant Killinger's conduct was "malicious, willful, reckless, or wanton."  [Doc. No. 168.]  In addition, the verdict form required the jury to make a separate finding in favor of Plaintiff on her punitive damages claim in addition to stating the amount of punitive damages. [Doc. No. 170.]

2.    **Proportionality**

Under the second guidepost, a court must examine the ratio between the punitive damages award and the actual or potential harm suffered by the Plaintiff.  See Campbell, 123 S. Ct. at 1524.  Without imposing a bright-line rule, the Supreme Court indicated that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in the range of 500 to 1, or . . . 145 to 1."  Id. (citation omitted).  Thus, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  Id.

The majority opinion in Campbell provides no concrete examples of the "few awards" that exceed a single-digit ratio to a significant degree and still satisfy due process.  Nevertheless,  both Campbell and Gore indicate that somewhat higher ratios may comport with due process "where 'a particularly egregious act has resulted in only a small amount of economic damages,'" or "where 'the injury is hard to detect or the monetary value of the noneconomic harm might have been difficult to determine.'"  Id. (quoting Gore, 517 U.S. at 582).  In such cases, a higher ratio may be necessary to achieve "the State's goal of deterrence and retribution."  Id.

It is reasonable to infer that certain federal civil-rights violations which result in only nominal damages or a small amount of compensatory damages may fall into this category.  See, e.g., Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091, 1116-17 (10th Cir. 2001) (concluding that a ratio of 20 to 1 was constitutionally permissible in a federal civil rights

action under 42 U.S.C. § 1981), cert. denied, 534 U.S. 1131 (2002); Deters v. Equifax Credit Info. Servs., 202 F.3d 1262, 1272-73 (10th Cir. 2000) (concluding that the ratio between a compensatory damages award of $5,000 and a punitive damages award of $295,000 was constitutionally permissible in a sexual harassment case under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e to 2000e-17); Swinton v. Potomac Corp., 270 F.3d 794, 818-20 (9th Cir. 2001) (concluding that a ratio of 28 to 1 was constitutionally permissible in a racial discrimination case under federal and state anti-discrimination statutes), cert. denied, 535 U.S. 1018 (2002); EEOC v. W & O, Inc., 213 F.3d 600, 616-17 (11th Cir. 2000) (concluding that ratios ranging between 3.8 to 1 and 26.3 to 1 were constitutionally permissible in employment discrimination cases under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)); cf. Day v. Westinghouse Gov't Envt'l Servs. Co., No. CIV 01cv1123 PK/KBM-ACE, slip. op. at 15-19 (D.N.M. July 22, 2003) (concluding that punitive damages of $300,000 were constitutionally permissible even though the jury awarded only $1 in nominal damages on state-law tort claims in a sexual harassment case).

A somewhat higher ratio in these types of cases may be constitutionally permissible under appropriate circumstances for the following reasons.  First, although the measure of punitive damages in civil-rights actions under 42 U.S.C. § 1983 generally derives from the common law of torts, see Stachura, 477 U.S. at 306 (citing Wade, 461 U.S. at 51-56), such federal civil-rights actions have unique features that distinguish them from ordinary tort actions in some respects.  In particular, actions under 42 U.S.C. § 1983 often serve an important interest in assuring that individual rights guaranteed by the United States

Constitution are "scrupulously observed." <u>Carey</u>, 435 U.S. at 266-67; <u>accord</u> <u>Stachura</u>, 477 U.S. at 308.  For this reason, nominal damages may be awarded to redress certain civil-rights violations even in the absence of an actual, compensable injury.  <u>See</u> <u>Carey</u>, 435 U.S. at 266-67; <u>Stachura</u>, 477 U.S. at 308 n.11; <u>Amato</u>, 170 F.3d at 317.

The fact that only nominal damages may be awarded in such cases does not necessarily preclude an award of punitive damages, <u>see</u> <u>Searles v. Van Bebber</u>, 251 F.3d 869, 879 (10th Cir. 2001), <u>cert. denied</u>, 536 U.S. 904 (2002), or an award of attorney fees, <u>see</u> <u>Nephew v. City of Aurora</u>, 830 F.2d 1547, 1550-51 (10th Cir. 1987) (en banc); <u>cf.</u> <u>Farrar v. Hobby</u>, 506 U.S. 103, 112-14 (1992) (concluding that "a plaintiff who wins nominal damages is a prevailing party under [42 U.S.C.] § 1988," subject to further inquiry as to the reasonableness of a fee award in light of the degree of the plaintiff's overall success in litigating his or her claim).  With respect to attorney fees, neither the Supreme Court nor the Tenth Circuit have imposed a rigid requirement of proportionality between the amount of damages actually recovered in a civil-rights action under 42 U.S.C. § 1983 and the permissible amount of an attorney-fee award under 42 U.S.C. § 1988.  <u>See</u> <u>Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986) (plurality opinion); <u>Nephew</u>, 830 F.2d at 1550-51.  These authorities suggest that the proportionality guidepost articulated in <u>Gore</u> and <u>Campbell</u> may allow a measured departure from single-digit ratios when punitive damages are awarded in certain federal civil-rights actions involving nominal damages or minimal compensatory damages.

-10-

When a jury determines that punitive damages are warranted in these types of cases, it is possible that "[a]n award of punitive damages proportioned to the low compensatory [or nominal] damages that were awarded would have a very meager deterrent effect, would fail to signal to the . . . authorities that [their misconduct] . . . will not be tolerated, and would not be commensurate with the moral gravity of the defendants' actions." Cooper v. Casey, 97 F.3d 914, 920 (7th Cir. 1996). Thus, "the use of a multiplier to assess punitive damages is not the best tool" in these types of cases. Lee, 101 F.3d at 811. Rather, courts "must look to the punitive damage awards in other civil rights cases to find limits and proportions." Id.; see, e.g., Mathie v. Fries, 121 F.3d 808, 817 (2d Cir. 1997) (collecting cases on punitive damages awards in civil-rights actions involving misconduct by law enforcement officers); Waits v. City of Chicago, No. 01- C 4010, 2003 WL 21310277, at *5 (N.D. Ill. June 6, 2003) (similar).

Like some of the other civil-rights cases cited above, the case at bar involves a relatively small amount of compensatory damages in comparison to the relatively high degree of reprehensibility of the defendant's misconduct. This imbalance weighs in favor of a measured departure from the single-digit ratio suggested in Campbell, 123 S. Ct. at 1524. See W & O, Inc., 213 F.3d at 616; Hampton, 247 F.3d at 1117; Deters, 202 F.3d at 1272-73; Swinton, 270 F.3d at 818-20.

In the alternative, I note that Campbell also permits consideration of the ratio between the "*potential* harm to the plaintiff and the punitive damages award." Campbell, 123 S. Ct. at 1524 (emphasis added); accord Gore, 517 U.S. at 581; Swinton, 270 F.3d at 819. Here

the potential harm to Plaintiff, in the form of more serious physical injuries resulting from being grabbed from behind by her bicycle helmet, knocked to the ground, struck in the breast, and handcuffed while standing by the street, was significantly greater than the actual harm shown at trial.  Because the kind of excessive force used by Defendant Killinger in this case carried a significant potential to inflict greater physical injury than what Plaintiff actually suffered, an award of punitive damages in this case could well exceed the $4,000 limit Defendant Killinger proposes and still fall within a single-digit ratio between the *potential* harm to the plaintiff and the jury's punitive damages award of $40,000.

### 3.     Comparable Cases

I next consider the third guidepost articulated in Campbell, 123 S. Ct. at 1526, which requires consideration of "the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'"  Id. (quoting Gore, 517 U.S. at 575).  Although there is relatively little legislative guidance on civil penalties in this area because Congress has not placed a statutory cap on the monetary damages available under 42 U.S.C. § 1983, some courts have drawn comparisons with the $300,000 statutory cap on damages in Title VII actions.  See Swinton, 270 F.3d at 820 (collecting cases).

Despite the absence of conclusive legislative guidance on civil penalties in this area, this third guidepost is particularly useful and relevant in civil-rights actions under 42 U.S.C. § 1983 because there is an established body of "comparable cases" in which courts have determined the appropriate level of punitive damages relating to police misconduct.  See Lee,

-12-

101 F.3d at 811 (reasoning that courts "must look to the punitive damage awards in other civil rights cases to find limits and proportions").

Turning to published judicial opinions in comparable cases involving police misconduct, I note that punitive-damages awards ranging from $4,000 to $500,000 have withstood judicial scrutiny.  See Mathie, 121 F.3d at 817 (collecting cases involving awards ranging from $75,000 to $500,000); Lee, 101 F.3d at 812 (collecting cases involving awards ranging from $100,000 to $185,000); Waits, No. 01 C 4010, 2003 WL 21310277, at *5 (collecting cases involving awards ranging from $4,000 to $200,000).  In light of these authorities, Defendant Killinger cannot complain that he lacked fair notice of the potential that punitive damages in this case could lawfully exceed a single-digit ratio.  See Patton v. TIC United Corp., 77 F.3d 1235, 1244 (10th Cir. 1996).

Perhaps the most comparable case is Blackledge, 126 F. Supp. 2d 224, in which the damages awarded by the jury were identical to the jury verdicts in this case:  $1,000 in actual damages and $40,000 in punitive damages.  That case arose from a traffic stop in which two police officers used excessive force by twice spraying the plaintiff in the face with "cap stun" while she was handcuffed and seated in the back of a police vehicle.  See id. at 225.  After considering the three guideposts set forth in Gore, a federal district judge concluded that punitive damages totaling $40,000 were not improper on these facts.  See id.  at 229-31.

Considering both the current state of the law and the particular facts of this case,  I conclude that the jury's award of $40,000 in punitive damages is not so grossly excessive as to violate the principles of due process articulated by the Supreme Court in Gore and

-13-

Campbell when considered in relation to the important governmental interests at stake in this civil-rights action.  While the degree of physical injury inflicted by Defendant Killinger's use of excessive force was relatively minor, the reprehensibility of his conduct, as well as the need for deterrence, are substantially increased by the fact that he had no lawful justification for seizing Plaintiff in the first place when he grabbed her by her bicycle helmet, slammed her bicycle down on the pavement, knocked her to the ground, struck her in the breast, and handcuffed her as she stood by the street.  For all of the above reasons, the judgment against Defendant Killinger will reflect the jury's punitive-damages award of $40,000, and Defendant Killinger's motion to reduce the amount of that award on constitutional grounds is denied.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that the jury's punitive damages award of $40,000 is not so grossly excessive as to violate the principles of due process articulated in Campbell and Gore.

**IT IS, THEREFORE, ORDERED** that Defendant Bryan Killinger's ***Motion for Remittitur*** [Doc. No. 171] is **DENIED**.

**SO ORDERED**, this 1st day of August 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

-14-